IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CONSTANCE RAE DANNELS,

        Plaintiff,

vs.                        Case No. 10-1416-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On September 29, 2008, administrative law judge (ALJ) Edmund C. Werre issued his decision (R. at 10-27). Plaintiff alleges that she has been disabled since July 15, 2005 (R. at 10). Plaintiff is insured for disability insurance benefits through September 30, 2009 (R. at 12). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since July 15, 2005, her alleged onset date (R. at 12). At step two, the ALJ found that plaintiff had the following severe

impairments: degenerative disc disease of the lumbar spine, degenerative joint disease, osteoarthritis, fibromyalgia, history of bilateral carpal tunnel releases, obesity, attention deficit disorder, major depressive disorder, and panic disorder with agoraphobia (R. at 12). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 14). After determining plaintiff's RFC (R. at 17), the ALJ determined at step four that plaintiff was able to perform past relevant work (R. at 25). In the alternative, at step five, the ALJ determined that other jobs exist in significant numbers in the national economy that plaintiff could perform (R. at 26). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 27).

**III. Did the ALJ err in his consideration of the opinions of Ms. Shelton, a treating psychologist?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When

a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.  Robinson, 366 F.3d at 1084.

   A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.  Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083

(10th Cir. 2004).  A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion.  If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

The record contains a mental RFC assessment from Cendie Shelton, dated August 13, 2008 (R. at 525-530).[1]  The ALJ noted that Ms. Shelton had provided treatment to the plaintiff, but also noted the "very short treatment history" (June 26 and July 3, 2008) at the time that Ms. Shelton completed the RFC

---

[1] Ms. Shelton opined in her report that plaintiff was extremely limited in 11 categories, markedly limited in 8 categories, and moderately limited in 4 categories (R. at 525-527).  At the hearing, the vocational expert (VE) testified that a person with the limitations contained in the report of Ms. Shelton could not work (R. at 56-57).

assessment.  The ALJ also stated that Ms. Shelton, whom he identified as an "LMP" and a "therapist," is not an "acceptable medical source" as defined in the regulations; therefore, her opinions were not entitled to controlling weight.  However, the ALJ stated that he considered the opinions of Ms. Shelton according to the requirements set forth in SSR 06-03p (R. at 23).

Acceptable medical sources include licensed physicians and licensed or certified psychologists.  20 C.F.R. 404.1513(a).  According to SSR 06-03p, expressly relied on by the ALJ:

> The fact that a medical opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because..."acceptable medical sources" "are the most qualified health care professionals."

SSR 06-03p, 2006 WL 2329939 at *5.  It is clear from the ALJ decision that one reason the ALJ gave less weight to the opinions of Ms. Shelton was because he concluded that she was not an acceptable medical source.

Ms. Shelton signed the RFC forms as Cendie Shelton, LMLP, therapist (R. at 527, 530).[2]  The treatment notes from Ms.

---

[2]If the meaning of the initials was not known to the ALJ, the ALJ has a duty to ensure that an adequate record is developed.  Madrid v. Barnhart, 447 F.3d 788, 790 (10th Cir. 2006).  The ALJ could have easily requested additional information either from Ms. Shelton or plaintiff's counsel if the profession of Ms. Shelton was not clear to the ALJ.  However, the ALJ can't just assume that a medical source is not an "acceptable medical source" without ascertaining the meaning or significance

8

Shelton from June 26 and July 3, 2008 are signed Cendie Shelton, LMLP (R. at 468-472). A licensed master's level psychologist (LMLP) is a licensed psychologist in the state of Kansas, and has been found to be an "acceptable medical source" within the meaning of the regulations. Bronson v. Astrue, Case No. 06-4142-JAR (Jan. 8, 2008; Doc. 20 at 20); West v. Barnhart, Case No. 02-1007-MLB (May 5, 2003; Doc. 30 at 9). Thus, the ALJ erred when he found that Ms. Shelton, a LMLP licensed psychologist, was not an acceptable medical source.

Furthermore, in his decision, the ALJ at one point stated that "the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual" (R. at 20). Later, as part of his reasoning for discounting the opinions of Ms. Shelton, the ALJ stated that plaintiff "has not had any psychiatric hospitalizations which would have been reasonable for an individual with such extreme limitations" (R. at 23). Plaintiff argues that the ALJ erred by failing to cite to any evidence or medical authority for these statements (Doc. 14 at 8). This argument was not addressed by the defendant in his brief.

In the case of Morgan v. Astrue, Case No. 08-1392-JTM (April 29, 2010; Doc. 16 at 16-17), the court faced the same issue as is

---

of the initials following the name of the treating source. Plaintiff's brief included documentation from the state of Kansas confirming the Ms. Shelton is an LMLP (Doc. 14-1).

before the court in this case.  The court held:

> ...*the ALJ also relied on the fact that plaintiff had not had surgery or inpatient hospitalization*, and had not been referred to physical therapy, when considering the medical evidence relating to plaintiff's RFC, including the opinions of Dr. Gillenwater (R. at 26; Doc. 13 at 7).  *However, the ALJ did not cite to any evidence regarding the relevance or significance, if any, of the fact that plaintiff had not had surgery, inpatient hospitalization, or physical therapy*.  In the case of <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1221 (10th Cir. 2004), the ALJ noted that the claimant did not require an assistive device for his neck.  The court held that there is no evidence that any physician recommended such a device or suggested that one would have provided any pain relief.  The court stated that an ALJ is not free to substitute his own medical opinion for that of a disability claimant's treating doctors.  As noted above, the ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment. <u>Bolan [v. Barnhart]</u>, 212 F. Supp.2d [1248, 1262 (D. Kan. 2002)].
> *In the absence of any medical evidence indicating the relevance or significance of the fact that plaintiff did not receive certain treatments, the ALJ is in no position to render a medical judgment regarding the relevance or significance of the fact that plaintiff did not receive certain treatments*. <u>Park v. Astrue</u>, Case No. 07-1382-MLB, 2008 WL 4186871 at *5 (D. Kan. Sept. 9, 2008, Doc. 17 at 11-12); <u>see</u> <u>Newman v. Astrue</u>, Case No. 08-1391-JTM (D. Kan. Feb. 2, 2010; Doc. 18 at 10-12)(*ALJ erred by failing to cite to any medical evidence to support his assertion that plaintiff had not received the type of treatment one would expect for a totally disabled individual*); <u>Burton v. Barnhart</u>, Case No. 06-1051-JTM (D. Kan. Nov. 1, 2006;

10

> Doc. 12 at 15)(ALJ erred by relying on the lack of certain types of treatment in the absence of any evidence that such treatment was recommended, would have lessened the claimant's limitations, or provided pain relief); Mazza v. Barnhart, Case No. 06-1018-JTM (D. Kan. Oct. 25, 2006; Doc. 13 at 20)(same).  For this reason, ***the ALJ erred by relying on the absence of surgery, hospitalization***, or physical therapy ***without any medical evidence regarding the relevance or significance of the lack of such treatment***.

(emphasis added).

As in the cases cited above, the ALJ in the case before the court discounted a medical opinion because plaintiff had not been hospitalized, which the ALJ conjectured "would have been reasonable for an individual with such extreme limitations" (R. at 23).  The ALJ also stated that plaintiff had not received the type of medical treatment "one would expect for a totally disabled individual" (R. at 20).  The ALJ cited to no evidence or medical authority for these assertions, and did not cite to any statute, regulation or ruling in support of these assertions.  As noted earlier, defendant, in his brief, did not even address this issue, and therefore presented no argument or rationale to justify these assertions by the ALJ.  In the absence of any argument, evidence or authority to support the ALJ's assertion that plaintiff should have been hospitalized if she had the limitations set forth by Ms. Shelton, or that she had not had the type of medical treatment one would expect for a totally disabled

individual, the ALJ was in no position to, and therefore clearly erred when he rendered a medical judgment regarding the relevance or significance of the fact that plaintiff was not hospitalized or did not receive certain types of treatment. This was clearly an invalid rationale for discounting the opinions of Ms. Shelton.

The ALJ offered other reasons for discounting the opinions of Ms. Shelton. The ALJ noted that plaintiff had only a very short treatment history when the RFC assessment was completed, noting sessions on June 26 and July 3, 2008 (R. at 23). However, the RFC assessment by Ms. Shelton indicates that plaintiff was last seen by Ms. Shelton on July 28, 2008 (R. at 525). Medical records later added to the record confirm that Ms. Shelton had a session with the plaintiff on July 28, 2008 (R. at 570). The additional records also indicate treatment sessions between Ms. Shelton and the plaintiff on August 20, September 10, and October 6, 2008 (R. at 561-569). Thus, the ALJ did not have before him all the treatment records of Ms. Shelton when she offered her opinions, nor did the ALJ have before him subsequent treatment records.

The ALJ also discounted the opinions of Ms. Shelton because they were not supported by her own treatment notes, or by treatment notes from other treating sources (R. at 23). However, the notes from Ms. Shelton on June 26, 2008 and July 3, 2008 indicate the following:

12

      1. Risk of violence to self/others
   (July 3 only)

      2. Treatment goals not yet met

      3. Impairment in social/academic/work
   functioning

      4. Services needed to maintain GAF and
   stabilize gains

      5. Interpersonal/behavioral difficulties

      6. Mood disorder

(R. at 468, 472).  On June 26, 2008, the records show that plaintiff was feeling worthless, with reported mood swings occurring rapidly, sometimes 3-4 times a day, and that plaintiff worries all the time about everything (R. at 477).

    The ALJ did not have before him all of the medical records, including treatment records from July 28, 2008, which was prior to the date that Ms. Shelton completed the RFC assessment for the plaintiff.  First, the court will not engage in the task of weighing this evidence in the first instance, Clifton v. Chater, 79 F.3d 1007 at 1009; Neil v. Apfel, 1998 WL 568300 at *3 (10th Cir. Sept. 1, 1998).  Second, the ALJ did not mention the findings made by Ms. Shelton in the treatment notes of June 26 and July 3, 2008, as noted above.  Third, it is not clear to the court why the treatment notes of Ms. Shelton, or the other treatment records, do not support her opinions.  See Shontos v. Barnhart, 328 F.3d 418, 426-427 (8th Cir. 2003)(The ALJ's assertion that these source's opinions were inconsistent with the

13

record is not borne out by the record. At most, the record is deficient in documentation to support their opinions). On remand, the ALJ, if he again finds that the treatment notes do not support the opinions of Ms. Shelton, should indicate why he believes that the treatment notes do not support the opinions of Ms. Shelton. See Krauser v. Astrue, 638 F.3d 1324, 1331 & n.3 (10th Cir. 2011).

The ALJ provided other reasons for discounting the opinions of Ms. Shelton, including his reliance on the opinions of Dr. Whitten and Dr. Mintz, who were consulting psychologists, and therefore acceptable medical sources (R. at 23-24). However, the relative weight given to their opinions as against the opinions of Ms. Shelton may have been impacted by the ALJ's erroneous finding that Ms. Shelton was not an acceptable medical source, when in fact she was an acceptable medical source. Therefore, on remand, in weighing the opinions of various medicals sources, the ALJ must consider the opinions of Ms. Shelton in light of the fact that she is a psychologist, and therefore an acceptable medical source, as well as a treatment provider. In light of this and other errors noted above in the ALJ's analysis of the opinions of Ms. Shelton, this case shall be remanded in order for the ALJ to properly consider the opinions of Ms. Shelton.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four

of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 20th day of December 2011, Topeka, Kansas.

<u>s/ Sam A. Crow</u>
Sam A. Crow, U.S. District Senior Judge